E-FILED
Wednesday, 21 November, 2007 02:57:56 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| STEVEN ABRON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-1157 |
| | ) |
| STATE OF ILLINOIS, DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, by and through its attorney, Lisa Madigan, Attorney General for the State of Illinois, and for its Reply Memorandum in support of its Motion for Summary Judgment states as follows:

**I.    Response to Plaintiff's Additional Material Facts**

    **A.    Additional Material Facts Admitted**

Defendant admits the following Additional Material Facts for the purposes of this Motion for Summary Judgment only: **Section a:** 1, 2, 3, 4, 5, 9, 10, 11, 12. **Section b:** 1, 2, 3, 4, 5. **Section c:** 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. **Section d:** 1, 2, 3, 4, 5, 6, 7, 8. **Section e:** 1, 7. **Section f:** 1, 2 **Section g:** 1, 2. **Section h:** 1, 2, 3, 4, 7. **Section i:** 1, 2. **Section j:** 1, 2,. **Section m:** 1. **Section n:** 1, 2, 3, 4. **Section o:** 1

    **B.    Additional Material Facts Denied**

**Section e:**

5 – Plaintiff claims "Abron went through his resume during his interview." This statement is not supported by the record. Plaintiff testified at his deposition that he answered the questions that were asked with his resume in mind, not that he went point by point through his resume. (Abron's Exhibit 14, p. 43, lines 2-15).

C.  **Additional Facts that are not material**

**Section a:**

6-8 – Warden Hulick's opinion about the desirable qualifications for a barber are not material because Warden Hulick played no role in developing the interview questions, assigning weight to the various questions, or in scoring the interviews, and he has never been involved in the hiring of a candidate that did not score the highest on the Rutan interview. (Exhibit K, p. 7, line 11 – p. 12, line 12).

13-16 – Warden Polk's opinion regarding the desirable qualifications for a barber are immaterial because there is no evidence that Warden Polk played any role in the decision not to hire Steve Abron as a barber at the Henry Hill Correctional Facility.

**Section c:**

11-12 – Whether or not the candidate evaluation forms were filled out with sufficient detail is immaterial to this case. The hiring decision was based on the interview scores, which are calculated before the candidate evaluation forms are filled out. The scores are calculated at the conclusion of each interview. (Exhibit G, p.29, lines 3-5). The candidate evaluation forms are not completed until after all the candidates are interviewed. (Exhibit G, p. 18, lines 4-22).

**Section e:**

2-4 – The contents of the various candidates' applications and resumes are immaterial because neither interviewer looked at or considered any of the applications or resumes in scoring the interviews. ((Exhibit G, p.36, lines 10-16; Exhibit C, p. 122, line 23 – p. 123, line 3; Exhibit DD, p. 37, lines 10-21).

6 – The contents of the various candidates' applications and resumes are immaterial because neither interviewer looked at or considered any of the applications or resumes in scoring the interviews. ((Exhibit G, p.36, lines 10-16; Exhibit C, p. 122, line 23 – p. 123, line 3; Exhibit DD, p. 37, lines 10-21).

**Section f:**

3-5 – Abron's mention of and the institution's use of ultraviolet sterilization is immaterial because neither of the interviewers was familiar with ultraviolet sterilization. Mr. Smith testified that he had no knowledge regarding the sterilization of barber equipment and gave Mr. Thompson a 4 "based on the delivery and the fact that he was straightforward and had command of the question. There wasn't the hesitation."

(Exhibit C, p. 81, line 11 – p. 82, line 12). Warden Shaw testified that he was looking for the phrase "wet and dry sterilization". (Exhibit G, p. 32, lines 12-24). The Interview Sheets for Mr. Thompson and Mr. Abron indicate that Mr. Thompson used the phrase "wet and dry sterilization" while Mr. Abron did not. (Exhibit N, O, P, Q).

**Section g:**

3 – Mr. Smith's opinion about the overall qualifications of the various candidates is immaterial. Mr. Smith did not interview the candidates and determine which was most qualified. Rather, he asked the candidates specific questions and then scored the individual answers. The scores Mr. Smith gave the candidates for their answers and the reasons for those scores are material; any opinion he may have formed as to their relative overall qualifications is not. (Exhibit C, p. 122, lines 6-22).

4-5 – Warden Hulick and Warden Polk's opinion of the relevance of the location of Mr. Thompson's shop is immaterial. The question is not whether Mr. Smith's opinion that the location of Mr. Thompson's shop in the "rough end of town" would prepare him for working with people of different backgrounds and interests was wise and correct. The question is whether Mr. Smith honestly believed this. "An employer may hire or refuse to hire an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for discriminatory reason." Malacara v. Madison, 224 F.3d 727, 731 (7th Cir. 2000).

6-7 – The location of Mr. Abron's shop is irrelevant because Mr. Smith did not know the location of Mr. Abron's shop at the time he scored the interviews. (Exhibit C, p. 47, lines 2-7).

8 – The fact that Mr. Shaw did not write down this information is immaterial.

**Section h:**

5-6 – Whether or not the employment decision form was filled out with sufficient detail is immaterial to this case. The hiring decision was based on the interview scores, which are calculated before the employment decision form is filled out. The scores are calculated at the conclusion of each interview. (Exhibit G, p.29, lines 3-5). The employment decision form is not completed until after all the candidates are interviewed and the scores are calculated. (Exhibit G, p. 21, lines 12-15).

8-9 – Whether or not the employment decision form was filled out with sufficient detail is immaterial to this case. The hiring decision was based on the interview scores, which are calculated before the employment decision form is filled out. The scores are calculated at the conclusion of each interview. (Exhibit G, p.29, lines 3-5). The employment decision form is not completed until after all the candidates are interviewed and the scores are calculated. (Exhibit G, p. 21, lines 12-15).

10 – The contents of the various candidates' applications and resumes are immaterial because neither interviewer looked at or considered any of the applications or resumes in scoring the interviews. (Exhibit G, p.36, lines 10-16; Exhibit C, p. 122, line 23 – p. 123, line 3; Exhibit DD, p. 37, lines 10-21).

11 – Mr. Abron's college courses in mid-management are immaterial because there is no evidence that Mr. Abron mentioned them during his interview or that either of the interviewers knew about them.

12 – Mr. Smith's opinion about the overall qualifications of the various candidates is immaterial. Mr. Smith did not interview the candidates and determine which was more qualified. Rather, he asked the candidates specific questions and then scored the individual answers. The scores Mr. Smith gave the candidates for their answers and the reasons for those scores are material; any opinion he may have formed as to their relative overall qualifications is not. (Exhibit C, p. 122, lines 6-22).

**Section i:**

3-11 – Plaintiff cannot recover under Title VII for a failure to follow an Administrative Directive. The fact that the interviewers did not come up with the questions or the weight assigned to each question does not support an inference that race was a factor in the hiring decision. Regardless of who wrote the questions, each candidate was asked the same questions regardless of race. The questions were weighted the same way for each candidate regardless of race.

**Section j:**

3-5 – Whether or not the candidate evaluation forms were filled out with sufficient detail is immaterial to this case. The hiring decision was based on the interview scores, which are calculated before the candidate evaluation forms are filled out. The scores are calculated at the conclusion of each interview. (Exhibit G, p.29, lines 3-5). The candidate evaluation forms are not completed until after all the candidates are interviewed. (Exhibit G, p. 18, lines 4-22).

**Section k:**

1-20 – The hiring of a barber at Illinois River Correctional Facility is immaterial to the decision to hire Mr. Thompson at Henry Hill Correctional Facility because none of the decision makers involved in the Illinois River hiring decision were involved in the Henry Hill hiring decision.

**Section l:**

1-3 – The fact that the rules allow a candidate who does not score the highest in the interview process to be hired under certain circumstances is immaterial. There is no evidence that the Illinois Department of Corrections has ever hired a candidate that did not have the highest score after a Rutan interview process. Warden Shaw and Warden Hulick each testified that they have never been involved in a Rutan interview process which did not result in the highest scoring interviewee being offered the position. (Exhibit G, p. 11, lines 9-12; Exhibit G, p. 24, line 22 – p. 25, line 3; Exhibit K, p. 12, lines 3-18).

**Section m:**

2 – Warden Polk's opinion about the importance of years experience as a barber is immaterial because there is no evidence that he played any role in the hiring decision in this case.

3 – The experience Mr. Thompson reported in his deposition is immaterial. What is material is what he said during his interview.

**Section n:**

5-8 – Ms. Davis and Warden Polk's opinion about the importance of the cutting of the hair of African Americans as opposed to whites is immaterial because there is no evidence that either Ms. Davis or Warden Polk has any input into who was hired as a barber at Henry Hill Correctional Facility.

### ARGUMENT

I. **There is no evidence to support an inference of discriminatory animus in the scoring of the interviews.**

Plaintiff, citing to Thanongsinh v. Board of Educ., 462 F.3d 762, 780 (7th Cir. 2006), correctly points out that he could avoid summary judgment if he could point to evidence which would support an inference of discriminatory animus in the scoring of the interviews. However, no such evidence exists in this case. In Thanongsinh, the plaintiff had evidence that a certification exam was conducted in a discriminatory manner. For example, both the plaintiff, an Asian-American, and another white employee failed to bring certain

materials that were a prerequisite to taking a portion of the exam. The white employee was permitted to take that portion of the exam while the plaintiff was not. Id. at 780. When the plaintiff complained about the administration of the test, a Director "said in an argumentative manner that he could not understand [plaintiff]. He immediately thereafter stated that [plaintiff] should learn better English." Id. at 781.

In the current case, Plaintiff was treated exactly the same as the white applicants. He was asked the same questions in the same order and scored using the same procedure. This also distinguishes this case from Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827 (7th Cir. 2007) in which an Arabic franchise owner lost his franchise due to his refusal to carry breakfast sandwiches while non-Arabic franchise owners who refused to carry the sandwiches did not lose their franchises. In the present case, there is no evidence whatsoever which would indicate that race influenced the way the interviews were conducted or scored.

Plaintiff points to the candidate evaluation forms, which were filled out after the interviews were conducted and the scores were calculated. Plaintiff argues that, because one cannot tell by looking at the initial candidate evaluation forms[1] why Mr. Thompson received a higher total score, a jury could speculate that race was considered. However, the most one can infer from the initial candidate evaluation forms is that the interviewers did not provide sufficient detail in the initial candidate evaluation forms.

Attached to this Reply as Exhibits EE through JJ are the candidate evaluation forms for the candidates that were not selected, other than Plaintiff. All of these candidates are white males, and all of them scored lower than Plaintiff. Comparing these forms to Plaintiff's shows that it is not always clear from the candidate evaluation forms why these white candidates received lower scores than Plaintiff. For example, under "Job Knowledge and Experience", the comments for Samuel Schaumleffel read "Maintains excellent knowledge regarding barbering skills and corrections experience." (Exhibit EE to this Reply). For Plaintiff, the comments in this section read "Maintains excellent knowledge regarding barbering duties. Has Correctional experience." (Exhibit 9 to Plaintiff's Response). Plaintiff received a 3.5 for this category while Mr. Schaumleffel received a 2.5. By Plaintiff's reasoning, this evidence supports an inference that Plaintiff received preferential treatment

---

[1] Central Management Services sent Mr. Thompson's initial candidate evaluation form back to the Department of Corrections because it did not contain sufficient detail. A second candidate evaluation form was completed for Mr. Thompson which contained more detail. The candidate evaluation forms for the candidates who are not selected are never submitted to Central Management Services.

because of his race. When taken together, the candidate evaluation forms support nothing but the inference that the interviewers did not include much detail in any of the candidate evaluation forms.

Plaintiff argues that his experience in corrections and of supervising other barbers should have been a benefit to him. In fact, the interview sheets reflect that Plaintiff did benefit from this experience. (Exhibits 15, 16, 18 and 19 to Plaintiff's Response). Plaintiff received a 4 (the highest score) from both interviewers on the first question of the interview. Both interviewers noted on their interview sheet for Plaintiff that Plaintiff had correctional experience and Warden Shaw noted that he owned and operated his own shop in regards to this question. Mr. Thompson received a three for this question from both interviewers. For the first question under Job Knowledge and Experience, Plaintiff received a 4 from both interviewers. Warden Shaw noted that Plaintiff supervised three other barbers. Mr. Thompson received a 3 for this question from both interviewers, with Warden Shaw noting that he did not have an employee working with him.

Plaintiff takes issue with the fact that Mr. Smith found it significant that Mr. Thompson's shop was on the "rough end of town." A look at Mr. Smith's interview sheet for Mr. Thompson shows that Mr. Smith considered this in scoring the question "How do you deal with people who have different backgrounds and interests from yours?" (Exhibit 15 to Plaintiff's Response). One might disagree with Mr. Smith's opinion that this was relevant to this question, but this does not support an inference that Mr. Smith considered race in calculating his scores. Furthermore, the location of Mr. Abron's shop is immaterial because Mr. Smith did not know the location of Mr. Abron's shop at the time of the interviews. (Exhibit C, p. 47, lines 2-7).

**II.    The individuals involved in the hiring of Mr. Thompson did follow their normal hiring procedures.**

Plaintiff argues that it is suspicious that the interviewers in this case did not write the interview questions themselves and determine the weight to be assigned to each as called for in the Administrative Directive.[2] However, Margaret Foley, Human Resources Representative at Hill Correctional Facility, testified that when Rutan interviews are to be conducted "what usually happens is we will outlook all the human resource reps and say have you ever hired such and such position; do you have any interview questions." (Exhibit E, p. 37, lines 9-12). In this case, the interview questions and the corresponding weights were

---

[2]Interestingly, to prevail in this case, Plaintiff must show that the interviewers discriminated against him, yet he argues that it would be better if the interviewers wrote the questions themselves.

-7-

provided by Logan Correctional Facility. (Exhibit E, p. 37, lines 13-22). While this process may not be the process envisioned in the Administrative Directive, it is the procedure normally used. It would have been abnormal if the interviewers had written the questions themselves.

Plaintiff also points out that under certain circumstances an individual can be hired even if they do not have the highest score after a Rutan interview. However, Warden Hulick and Warden Shaw both testified that they have never been involved in a Rutan interview process that resulted in the highest scoring candidate being passed over for a lower scoring candidate. (Exhibit G, p. 11, lines 9-12; Exhibit G, p. 24, line 22 – p. 25, line 3; Exhibit K, p. 12, lines 3-18). There is no evidence that the Department of Corrections has ever passed over the highest scoring candidate after a Rutan interview process. In this case, the Department of Corrections hired the highest scoring candidate because that is their normal procedure. It would have been abnormal if Plaintiff had been hired despite not being the highest scoring candidate.

Plaintiff also points out that the initial candidate evaluation form for Mr. Thompson was rejected by Central Management Services because it did not contain sufficient detail. Debbie Davis, Division Manager for Transaction Records and Back Wage Claims at Central Management Services, testified that there have been several times that Candidate Evaluation Forms have been returned to agencies for insufficient detail. (Exhibit DD, p. 23, lines 10-24). Ms. Davis also testified that Central Management Service first started reviewing these documents in approximately May of 2003. (Exhibit DD, p.10, line 20 – p. 11, line 4). Insufficient candidate evaluation forms were more common when the review process first started, but by the time of Mr. Davis' deposition on September 12, 2007, there was getting to be fewer instances of insufficient forms, and Ms. Davis testified that individuals whose primary job is performing Rutan interviews typically do a better job filling out the forms. (Exhibit DD, p. 23, lines 10-24).

  **III.** **The scoring of the interviews at Illinois River Correctional Facility has no bearing on the scoring of interviews at Henry Hill Correctional Facility because the interviews were scored by different people.**

Plaintiff points to perceived inconsistencies between the way the interviews for the barber position and Illinois River were scored and the way the interviews for the barber position at Henry Hill were scored. The Plaintiff claims that correctional experience was weighted more heavily at Illinois River than at Henry Hill. As stated previously, Plaintiff's correctional experience was factored into his score. Additionally, these two

situations are not comparable because each involved different decision makers. Warden Knox was the interviewer for the Illinois River position. Warden Knox played no role in the Rutan process at Henry Hill, and Mr. Smith and Warden Shaw played no role in the Rutan process at Illinois River. Even if Warden Knox did place more importance on correctional experience than Mr. Smith, and Warden Shaw did in scoring the interviews, this is not an indication that race was considered. Plaintiff was treated exactly the same as the white candidates

### IV. The Department of Corrections has given a detailed enough explanation of the interview scoring process to state a legitimate, nondiscriminatory reason for hiring Mr. Thompson instead of Plaintiff.

Plaintiff claims that the Department of Corrections' proffered explanation for its employment decision in this case is similar to the explanation that the Seventh Circuit found to be insufficient in U.S.E.E.O.C v. Target Corp., 460 F.3d 946, 958 (7th Cir. 2006). However, the Department of Corrections has provided much more information about the criteria used in scoring its interviews than Target did in that case. Target's "explanation was only that 'based on [the] interview, Target decided that [the candidate] did not meet the requirements for [the position], and therefore elected not to hire him." Id. The Seventh Circuit found that this explanation did not shift the burden back to Plaintiff because it did not provide details of what requirements the candidate lacked. Id.

In the present case, the Department of Corrections has provided significant detail regarding the scoring of the interviews. Interview sheets containing all of the questions asked of the candidates, notes regarding their answers, and the scores each candidate received for each question have been produced and submitted to the Court. This has sufficiently framed the issue as to whether or not Mr. Smith and Warden Shaw honestly believed that the scores they gave the various candidates were appropriate given the candidates' responses to the questions. This is much more similar to the explanations found to be sufficient in Jordan v. Summer, 205 F.3d 337, 343 (7th Cir. 2000), Blise v. Antaramian, 409 F.3d 861, 866 (7th Cir. 2005), Vitug v. Multistate Tax Commission, 88 F.3d 506, 515 (7th Cir. 1996) and Ghosh v. Indiana Dep. Of Environmental Management, 192 F.3d 1087, 1092 (7th Cir. 1999).

While Plaintiff has provided evidence that reasonable minds could differ regarding which candidate should have received the higher score, he can point to no evidence that would support an inference that Mr. Smith and Warden Shaw did not honestly believe that the scores they gave were appropriate.

### V.     The Department of Corrections has consistently stated that the reason Mr. Thompson was selected for the position was that he received the highest interview score.

Since Plaintiff's first inquiry regarding the reason he was not selected for the position, the Department of Corrections has stated that the hiring decision was based on the interview scores. On or about February 2, 2005, Margaret Foley sent a letter to Plaintiff stating "Please be advised that you were not selected based on scores from the interview process." (Exhibit M). The interviewers have offered various reasons for the various scores associated with the individual interview questions, which is not surprising considering each question relates to different criteria. One would not expect the factors that determined the scores on questions related to job knowledge and experience to be the same as the factors that determined the scores on questions related to interpersonal communications. The Department of Corrections has consistently stated that the hiring decision was based on the interview scores.

WHEREFORE, Defendant, Illinois Department of Corrections, respectfully requests that summary judgment be entered in its favor.

        Respectfully submitted,

        ILLINOIS DEPARTMENT OF CORRECTIONS,

          Defendant,

        LISA MADIGAN, Attorney General,
        State of Illinois,

          Attorney for Defendant,

Thomas H. Klein, #6271653
Assistant Attorney General
500 South Second Street        By:   s/ Thomas H. Klein
Springfield, Illinois 62706            THOMAS H. KLEIN
(217) 782-9014                    Assistant Attorney General

Of Counsel.

## CERTIFICATE OF SERVICE

  I hereby certify that on November 21, 2007, I electronically filed the foregoing Reply Memorandum in Support of Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

 John Rehn
 john@johnrehn.com

and I hereby certify that on November 21, 2007, I mailed by United States Postal Service, the document to the following non-registered participant:

 None.

            Respectfully submitted,

            s/ Thomas H. Klein
            THOMAS H. KLEIN, #6271653
            Assistant Attorney General
            500 South Second Street
            Springfield, IL  62706
            Telephone:  (217) 782-9014
            Facsimile:  (217) 524-5091
            tklein@atg.state.il.us