**E-FILED**
Friday, 18 January, 2008  03:21:13 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| STEVEN ABRON,             ) | |
|                    ) | |
|     Plaintiff,       ) | |
|                    ) | |
|        v.           ) | Case No. 06-cv-1157 |
|                    ) | |
| STATE OF ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS,          ) | |
|                    ) | |
|     Defendant.       ) | |

## <u>O R D E R</u>

Before the Court is the Motion for Summary Judgment filed by Defendant, Illinois Department of Corrections, on October 19, 2007 [Doc. 43]. For the reasons that follow, the Motion is GRANTED.

### BACKGROUND

Plaintiff, Steven Abron, applied for a barber position at the Henry Hill Correctional Center ("Henry Hill CC) in December 2004. Plaintiff was one of eight persons who applied for the job. Each applicant was interviewed. Plaintiff was the only African-American to apply and be interviewed. Plaintiff did not get the job; instead, Henry Hill CC hired Larry Thompson, a Caucasian. Plaintiff believes that he was not hired because of his race and has filed suit under Title VII, 42 U.S.C. § 2000e-2(a)(1).

The following facts are undisputed.  The job posting listed certain general requirements:

> Requires possession of a valid Illinois License as a barber.  Requires experience necessary to qualify as a journeyman barber.  Requires working knowledge of barbering techniques, methods, practices, and the operation, maintenance and sterilization of barber shop tools and equipment.  Requires elementary knowledge of first aid.  Requires responsibility for the safekeeping of barbering tools and the ability to perform all tasks usually associated with journeyman barbers.

The interviews were conducted by Frank Shaw, the assistant warden, and William Smith, the business administrator, both of whom are Caucasian.  The interviewees were all asked the same questions in the same order as part of the "Rutan interview process."[1]  (Smith Dep. p. 34).  The ten questions are divided into four categories: 1. "education, training and skills"; 2. "job knowledge and experience"; 3. "interpersonal relations"; and 4. "work history."  Each answer is assigned a point value on a 1 to 4 scale, with 4 being the highest score.  Each category is also weighted.  The points for the questions in each category are averaged and accordingly weighted.  The weighted scores for each category is then added to achieve a total score.[2]  No

---

[1] Smith explained that this process was used to eliminate the specter of political hiring.  (William Smith Dep. p. 6).

[2] Plaintiff indicates that he disputes these facts.  He only argues, however, that "Defendant [sic] denies that the scores were based strictly on the interviews and asserts that the scores were based on race."  (Pl. Brief p. 4).  Plaintiff does

additional questions or follow-up questions were asked.  Each interviewer scored the interviewees independently from each other and only discussed the interviews after they had written down their points.  Each interviewer also took notes on each interviewee.  According to the calculations, Larry Thompson achieved a score of 3.43, and Plaintiff received a score of 3.22.  The remaining candidates scored from 2.76 to 2.24.

Defendant indicates that the interviewers, Shaw and Smith, did not review the resumes of the candidates prior to the interview nor were any of the points based on the resumes. Rather, Defendant indicates that Thompson was selected based on the interview alone – that neither his resume nor any of the other candidate's resumes were considered in assigning points or the actual hiring decision.  Defendant further notes that Thompson stated in the interview that he had 40 years of experience in barbering and that he owned his own shop. Plaintiff stated in the interview that he had 28 years of experience, owned his own shop, and that he worked as a barber for the Kewanee Youth Center and the Knox County Jail. Defendant then argues that Thompson was picked because he was considered the superior candidate, having achieved the highest score in the interview.

not in fact object to the recitation of the process; rather, he objects to the conclusion that successful candidate, Thompson, was chosen based on the interview scores.

Plaintiff, in disputing the fact that Shaw and Smith did not review resumes in assigning points, indicates that they both had access to the resumes prior to the interviews. Plaintiff also takes issue with the selection by arguing that Plaintiff was the better candidate. Plaintiff states that he had experience in the correctional setting that Thompson did not. Plaintiff also had supervisory skills, having supervised three barbers and having taken management courses, that Thompson did not. Plaintiff also was familiar with ultraviolet sanitizing techniques. Plaintiff also had more experience cutting African-American hair. Thus, Plaintiff states, he was better qualified for the job than Thompson.

Plaintiff also presents evidence that he believes would lead to the conclusion that the selection process is suspect. Plaintiff has presented evidence that various personnel at the jail believe that Plaintiff's qualifications are superior or more desirable than Thompson's qualifications. Plaintiff also indicates that there were discrepancies between Thompson's interview answers and the information located on his resume. Plaintiff states that Defendant did not follow its own procedures in conducting the interview and selecting the most desirable candidate. Finally, Plaintiff states that the justification presented for hiring Thompson did not correlate with the notes and information provided at the time of

4

interviews.  For example, Plaintiff states that notes on review sheets would not justify the disparity in points between Thompson and Plaintiff.

## STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial."  Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24.  "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its

contentions with proper documentary evidence." <u>Chemsource, Inc.</u>
<u>v. Hub Group, Inc.</u>, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all
inferences drawn from it in the light most favorable to the
[non-moving party]." <u>Holland v. Jefferson Nat. Life Ins. Co.</u>,
883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is
not "required to draw every conceivable inference from the
record -- only those inferences that are reasonable." <u>Bank</u>
<u>Leumi Le-Isreal, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991).
Therefore, if the record before the court "could not lead a
rational trier of fact to find for the non-moving party," then
no genuine issue of material fact exists and, the moving party
is entitled to judgment as a matter of law. <u>McClendon v.</u>
<u>Indiana Sugars, Inc.</u>, 108 F.3d 789, 796 (7th Cir. 1997) (quoting
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
587 (1986)). However, in ruling on a motion for summary
judgment, the court may not weigh the evidence or resolve issues
of fact; disputed facts must be left for resolution at trial.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

### DISCUSSION

In order to withstand summary judgment in this Title VII
case and show discriminatory intent in hiring, Plaintiff may
proceed under the direct method or he may proceed under the
familiar, burden-shifting, indirect method outlined in <u>McDonnell</u>

6

*Douglas Corp. v. Green*, 411 U.S. 792 (1973); <u>Rudin v. Lincoln</u>

<u>Land Community College</u>, 420 F.3d 712, 719 (7th Cir. 2005).

Plaintiff has not provided any direct or circumstantial evidence

of a discriminatory intent and is therefore proceeding under the

indirect method.  As such, Plaintiff must establish a *prima*

*facie* case of discrimination: that he is a member of a protected

class, that he applied for and was qualified for the job, that

he was rejected, and that the position was filled by a person

not in the protected class.  <u>See</u> <u>Blise v. Antaramian</u>, 409 F.3d

861, 866 (7th Cir. 2005).  There is no dispute that Plaintiff

has made a *prima facie* case of discrimination.

The burden of production now shifts to Defendant which must

articulate a legitimate, non-discriminatory reason for the

employment decision.  <u>Koszola v. Board of Education of City of</u>

<u>Chicago</u>, 385 F.3d 1104, 1110 (7th Cir. 2004).  Once Defendant

has done so, the burden of production switches back to Plaintiff

who must show that the proffered reason is merely a pretext for

discrimination.  <u>Blise</u>, 409 F.3d at 867.  "A plaintiff shows

that a reason is pretextual directly by persuading the court

that a discriminatory reason more likely motivated the

defendants or indirectly by showing that the defendants'

proffered explanation is unworthy of credence."  <u>Id.</u> (internal

quotation marks, editing marks, and citation omitted).  A

pretextual reason is one that is phony or a lie – a mistake no

matter how "ill-considered or foolish," does not suffice.  Id.;
U.S. Equal Employment Opportunity Commission v. Target Corp.,
460 F.3d 946, 956-957 (7th Cir. 2006) (noting that in order to
show pretext, a plaintiff may show that the reasons offered are
"factually baseless," "not the employer's actual motivation,"
"insufficient to motivate the action," or "otherwise
pretextual").  In articulating its reason, a defendant must
"explain its claimed reason for rejecting an applicant clearly
enough to allow the court to focus its inquiry on whether the
employer honestly believed that reason."  Target Corp., 460 F.3d
at 957.  In its memorandum, Defendant asserts that Plaintiff was
not hired for the position because he did not receive the
highest score after the interview.  The interviewers believed
that Thompson was more qualified based on the answers he gave.

    As indicated above, Plaintiff states that this reason is
merely a pretext for discrimination because he is more qualified
for the position, Defendant failed to follow its own procedures,
and because the reasoning behind the scores is beyond belief.
As to the first reason, merely because Plaintiff believes he is
more qualified, or indeed if he is in fact more qualified, is
not sufficient to show that Defendant discriminated against him
by not hiring him.  Blise, 409 F.3d at 867.  As both parties
acknowledge, this Court does not sit as a "super-personnel
board" that would evaluate the relative merit of Defendant's

8

hiring choices.  Millbrook v. IBP, Inc., 280 F.3d 1169, 1182
(7th Cir. 2002) (stating "we must adopt the standard that we
have today – that comparative qualifications do not support a
finding of pretext – or we would be allowing plaintiffs to reach
the jury based solely on a claim that the employer cannot be
believed"); Mlynczak v. Bodman, 442 F.3d 1050, 1059-1060 (7th
Cir. 2006).

     In addition, Plaintiff's qualifications, standing alone,
are not so "clearly impressive" to raise an inference of
discrimination.  Mlynczak, 442 F.3d at 1-59-1060 (citing Ash v.
Tyson Foods, Inc., 546 U.S. 454 (2006)); Millbrook, 280 F.3d at
1182.  Plaintiff presents evidence that at the interview he told
Shaw and Smith that he had correctional experience.  Plaintiff
stated that he was a contract barber at a juvenile facility (the
Illinois Youth Center Corrections Facility).  (PSAMF[3] (a)(3)).
Plaintiff also told the interviewers that he had 28 years of
total experience, three years of correctional experience, and 12
years of experience at the Knox County Jail as a barber.  (PSAMF
(b)(2)).  Thompson, on the other hand, stated at the interview

---

[3] "Plaintiff's Statement of Additional Material Facts" contained
in his November 9, 2007, Response to the Motion for Summary
Judgment [Doc. 45] begins on page 5.  Each of the facts
presented are undisputed unless otherwise indicated.

that he had 40 years of experience (DSMF[4] 21), but no correctional experience. (PSAMF (b)(5)). At the interview, Plaintiff also discussed ultraviolet sterilization whereas Thompson did not. (PSAMF (f)(3) and (5)). These are the only differences, that Plaintiff has presented evidence on, that were highlighted to the interviewers.[5]

---

[4] "Defendant's Statement of Material Facts" which is contained in the Memorandum in support of the Motion for Summary Judgment filed on October 19, 2007 [Doc. 44].

[5]    In his brief, Plaintiff has presented other differences between Plaintiff and Thompson that would indicate that Plaintiff is more qualified. Plaintiff states that:

> 1.  Plaintiff's resume showed that he had supervised three "licensed operators" (the Court assumes these are other barbers) (PSAMF (e)(3)). Thompson's resume had no similar statement. (PSAMF (e)(6)).

> 2.  Plaintiff's resume showed that he had 25 hours of management courses (PSAMF (h)(10)) and that Thompson's resume contained no similar training or education. (PSAMF (h)(9)).

There is no indication in the record, however, that either of these pieces of information were known by the interviewers at the time of the decision. While Plaintiff has indicated that Shaw and Smith had access to the resumes and applications, there is no showing that they reviewed the same. In fact, the evidence reveals the opposite: that the resumes and applications were not considered in achieving the scores which lead to Thompson's hiring. As such, these differences are immaterial. See Target Corporation, 460 F.3d at 960 ("Only evidence of information that was available to the employer at the time it rejected the application will be relevant."). It is also immaterial whether interview answers correlated with information on the resumes. The only material information is that relayed or known to the decision-makers.

These differences are not so clearly superior that they would, standing alone, lead to the inference of discrimination. At his deposition, Smith indicated that he believed that Thompson was the better candidate because he owned his own shop. (Smith Dep. p. 22-23).  Smith believed that this fact indicated an ability to "order parts, maintain inventory, maintain sanitation, and that type of thing" and supervisory skills. (Smith Dep. 21-24). As to the locations of their shops, Smith's interview form for Thompson indicates that Thompson has a shop in the "rough end of town" and there is no similar indication in Abron's interview form and no evidence that this fact was highlighted with the interviewers.  This fact indicated to Smith that Thompson is used to "dealing with adults, that he would not be intimidated by an adult population." (Smith Dep. 43).  This quality was considered more impressive than having experience in a juvenile facility.  (Smith Dep. 43).  Finally, there is no evidence that perhaps ultraviolet sterilization (which was mentioned by Plaintiff at his interview) is remarkably superior to wet/dry sterilization (which Thompson mentioned in his interview) such that the ability to use the former is a markedly superior qualification.  The Court further notes that the superior qualifications that Plaintiff highlights were not specifically required in the job posting.

However, Plaintiff does not rely on his qualifications alone to support a finding of pretext.  Plaintiff next argues that the interview process is suspect because Defendant failed to follow its own procedures.  Plaintiff states that the following irregularities occurred:

> 1.  The interviewers did not comply with Illinois Department of Corrections Administrative Directive 03.02.106 (effective 1/1/2002) because they did not "identify the major job responsibilities and essential functions, identify hiring criteria, assign percentage weights to each hiring criteria and develop the interview questions to be asked of each applicant." (Pl. Ex. 1, p. 5) (PSAMF (i)(1-11)).
>
> 2.  The forms were not filled out correctly and there was limited explanation of why Thompson was the better candidate.  (PSAMF (h)(1-12)).
>
> 3.  The hiring process at Henry Hill CC differed from the hiring process for the same position at the Illinois River Correction Center ("Illinois River CC").  (PSAMF (k)(1-20)).

Plaintiff first contends that Defendant did not follow an administrative directive requiring interviewers to complete certain tasks and that this is an indication of discrimination. To support this contention, Plaintiff points to Rudin in which the Seventh Circuit stated that "[w]e believe that the fact that [the defendant] did not follow its own internal procedures with respect to the hiring process for the position also points to discriminatory motivation."  Id. at 723.  In response, Defendant asserts that while the administrative directive was not followed to the letter, Defendant's "normal procedure" was employed.  As

Margaret Foley, the human resources representative at Henry Hill CC, stated, the interview questions were taken from a questionnaire developed by the Logan Correctional Facility – that the facility typically uses standard forms.  (Margaret Foley Dep. pp. 37-38).   Thus, Defendant asserts that it would be "abnormal" for Shaw and Smith to follow the directive to the letter.

In Rudin, the Seventh Circuit found that the "systematic abandonment of [the defendant's] hiring policies" was evidence of discrimination.  420 F.3d at 723.  Plaintiff has not shown such a systematic abandonment of Defendant's hiring policies. Rather, Plaintiff has shown that Defendant failed to follow an administrative directive and instead followed practice.  This makes sense: why re-invent the wheel and develop new interview questions for the barber position when such questions are available for use from the interview process at a different facility.  Plaintiff's argument in this respect merely highlights form over function.  Nonetheless, Defendant did disregard the administrative directive in conducting the interview.

Plaintiff next asserts that the interview forms do not explain why Thompson scored higher than Plaintiff.  A review of the interview sheets (filled out by Shaw and Smith during the interview) reveal that in each category a score is assigned and

13

each of the interviewers made certain notes beneath each question.  For example under the question, "Describe the specific job duties and responsibilities of your previous barbering position,"[6] Shaw assigned Thompson the score of 3 and included the note "I own [and] manage my own barbershop.  I manage my shop and order supplies.  I work by myself/no employees w/me."  (Def. Ex. P, p. 3).  In the same question for Abron, Shaw assigned a score of 4 and stated "Check appointment, tools, then cutting procedure.  I order my supplies in my shop – I supervise (3) other barbers.  Retail exp."  (Def. Ex. N, p. 3).[7]

        After the interviews were completed, Shaw, in collaboration with Smith, filled out a "candidate evaluation form" ("CEF") for each interviewee.  (Frank Shaw Dep. pp. 18-19).  Foley then typed up the handwritten notes made on the CEFs.  (Foley Dep. p. 16).  The CEFs only contain the four categories identified above and not the individual questions.  In Thompson's CEF under the "job knowledge and experience" category, there is a comment of "maintains excellent knowledge and job experience for the position" with a corresponding "percent weight" of 30%, a "pts/rtg" of 3.5, and a "wtd score" of 1.05.  (Pl. Ex. 10).  In

[6] This question is located in the "Job Knowledge and Experience" category.

[7] The Court's interpretation of Shaw's handwriting may not be entirely accurate.

14

Plaintiff's CEF for the same category, there is a comment of
"maintains excellent knowledge regarding barbering duties.  Has
Correctional experience," and identical numbers for the
remaining criteria, 30%, 3.5, and 1.05, respectively.  The CEFs
were then submitted to Debra Davis, who was the assistant to the
bureau manager of the Bureau of Personnel at the Central
Management Services.  Davis would then determine whether the
CEFs are filled out correctly and whether they contain enough
information to justify the hiring of a candidate.

Plaintiff points out that in the first category,
"education, training and skills," the comments on Thompson's CEF
state "completed all requirements for this position with above
average skills" with a corresponding "pts/rtg" of 3.7.
Plaintiff then points out that in the same section of Abron's
CEF, an additional comment of "maintains correctional
experience" is present but with a lower "pts/rtg" of 3.3.  Davis
testified that looking at the CEFs alone, she could not tell why
Abron received a lower score than Thompson.  (Debra Davis Dep.
pp. 36-37).  This discrepancy, Plaintiff argues, is an
indication of discrimination.

However, prior to indicating that she could not tell from
the CEFs why Thompson received a higher score, the following
exchange occurred:

Q: Do you believe that these forms, the candidate
evaluation form, should you be able to read the
comment section, and based on the comment section of
one candidate and another candidate be able to figure
out why one got a higher score than the other one in
different categories?

A.  You should be able to.

Q.  Comparing Exhibit 6, which is the candidate
evaluation form for Steve Abron, with the second page
of Exhibit 26, which was the initial candidate
evaluation form for Mr. Thompson, can you look at the
comments section for Mr. Abron for the category of
education, training, and skills and compare it to the
comments section under Mr. Thompson for that same
category, and after you'd had a chance to read those,
if you can  --

A. They're nearly the same.  I don't know what they
base their ratings on . . . .

Q.  . . . . Mr Abron's comments for that category
were completed all requirements for this position with
above average skills, and maintains correctional
experience; is that right?

A. Correct, **but they also derive this definition off
of the interview questions.  The interview questions
are scored there.  So they would transfer their
percentages over to that, and I don't know what the
individual questions are.  That might have some
indication for the point differences.  I don't know
how they rated those.**

(Davis Dep. pp. 35-36) (emphasis added).

An inference to be drawn from this exchange is that the actual

interview sheets may contain more information than the CEFs –

information that would justify the point differential –

notwithstanding the similar statements made in the "comments"

section of the CEFs.

Thus, as Defendant points out, the detail (or lack thereof) on the CEFs are immaterial to the actual employment decision – which was made by Defendant based solely on the scores given by the interviewers.  Plaintiff's reliance on the CEFs, then, is misplaced: the evidence merely shows that Shaw and Smith failed to provide sufficient detail.  No jury would find that this failure is evidence of intentional discrimination.[8]

Plaintiff next argues that an inference of discrimination can be made by comparing the hiring process at Henry Hill CC with the process at Illinois River CC.  Plaintiff had applied for the barber position at Illinois River CC.  However, the successful candidate at Illinois River CC, Lawrence Huggins, was hired because his 13 years of experience in a correctional institution outweighed Plaintiff's 29 years of general barbering experience.  Plaintiff argues that at Henry Hill CC, his combined 15 years of correctional experience should have outweighed Thompson's 40 years of general barbering experience in the same way that Huggins' 13 years of correctional experience outweighed his (Plaintiff's) 29 years of general experience.

---

[8] While Plaintiff highlights the lack of detail in the CEFs in making this argument, he does not go through each of the questions in each category to discredit the points given (except to point out his superior qualifications which are addressed above).

Plaintiff does not cite to any case authority that would support the proposition that two hiring processes and decisions made by two different supervisors, albeit within the same organization and for the same type of position, would lead to an inference of discrimination.  Plaintiff cites to Rudin for the proposition that inconsistent explanations for an employment decision can be evidence of discrimination.  Id. at 723-724.  In Rudin, the inconsistent explanations were made by the decisionmaker and then repeated or modified by various supervisory personnel.  In addition, before the Court, the defendant provided yet another explanation.  The case at bar is not analogous.  Plaintiff argues that the inconsistency lies in the separate notes made by Shaw and Smith and in the manner in which the hiring decision was made at Henry Hill CC and Illinois River CC.  There is no contention, however, that either Shaw or Smith have changed their own justification for picking Thompson; nor is there any evidence that Defendant changed its story with respect to Thompson's hiring at Henry Hill CC (which would make Plaintiff's argument similar to the change in story outlined in Rudin).  This argument, then, is unavailing.

Plaintiff next points to Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827 (7th Cir. 2007), for the proposition that disparate treatment of similarly situated individuals may lead to a

finding that Defendant's reasons are pretext.[9]  Plaintiff
specifically argues that he was rejected at Illinois River CC
because he didn't have the correctional experience of the white
candidate (Huggins); but he was also rejected, even though he
had the correctional experience, at Henry Hill CC and a white
candidate without the experience was hired. In <u>Elkhatib</u>, the
Seventh Circuit considered the similarly-situated prong of the
*prima facie* case by stating:

> The similarly-situated requirements should not be
> applied mechanically or inflexibly, but rather is a
> common-sense flexible inquiry that seeks to determine
> whether there are enough common features between the
> individuals to allow a meaningful comparison.  <u>Id.</u> at
> 831.

Thus, Dunkin Donut franchises that were in the same geographical
areas, subject to the same franchise agreements, and which
failed to carry breakfast sandwiches were considered similarly
situated.  The Seventh Circuit went on to hold that Dunkin
Donut's reasons for its treatment of the plaintiff, that the
franchise agreement mandates serving breakfast sandwiches, may
be pretextual because it did not require other franchisors to
sell the sandwiches.

---

[9] This case involved an Arab-Muslim's refusal to carry pork
products (that are part of breakfast sandwiches) at his Dunkin
Donuts franchises because he was forbidden from handling pork.
Dunkin Donuts had, in the past and for 18 years, approved of the
failure to carry pork products but changed tact when the
plaintiff sought to relocate or renew his franchise agreements.

In the case at bar, Defendant's hiring of Huggins at
Illinois River CC does not make Defendant's reasons for not
hiring Plaintiff at Henry Hill CC pretextual.  Huggins was hired
by a different supervisor.  There is no evidence that Huggins
was hired via the Rutan process.  There is no evidence that the
candidates at Henry Hill CC were evaluated in the same manner as
the candidates at Illinois River CC.[10]  Nonetheless, it seems
bizarre that a characteristic that is considered desirable at
one correctional institution was not considered as much in
another.  However, this dissimilarity only highlights that
different decision-makers valued different characteristics: at
Illinois River CC, it was correctional experience; at Henry
Hill CC, it was years of barbering experience, location of the
barber's shop, and ownership of that shop.

The only question that remains is whether, in light of the
combined arguments made by Plaintiff, Defendant's proffered
reasons are merely a pretext for discrimination.  See
Thanongsinh v. Board of Education, 462 F.3d 762, 780 (7th Cir.
2006) (evaluating all of the plaintiff's evidence to determine
discriminatory intent even though individual pieces of evidence
are insufficient).  Plaintiff's evidence boils down to his
belief that he is more superior, a belief that is shared, to

---

[10] Although, Plaintiff points that that the hiring person at
Illinois River CC, Warden Polk, stated that he was not aware of
any differences between the barber position at either facility.

varying degrees, by various employees of Defendant.  Plaintiff's
evidence also highlights the strange manner that Defendant chose
to conduct interviews for this position.  The interviewers had
no input in the interview process other than being the persons
who asked questions and evaluated answers.  The interviewers did
not review resumes despite their availability.  The interviewers
were not told what characteristics were helpful or desired and
instead relied on their own layman's opinion of what constitutes
a good barber in a correctional setting.  The interviewers did
not ask follow-up questions that would have provided
clarification or context for the answers that were given.  In a
zeal to avoid political hiring, Defendant appears to have chosen
a generic procedure to hire for a specialized job.  Plaintiff's
evidence also points to a lack of uniformity in the hiring
process for the same position at different facilities.
Defendant offers no substantial argument in this respect other
than to state that each hiring decision was made by a different
supervisor.

    Despite this anomalous and seemingly silly hiring process,
this Court cannot hold that the undisputed evidence would
support a finding that Plaintiff was intentionally discriminated
against when he applied for the barber position at the Henry
Hill CC.  See Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417
(7t5h Cir. 2006) ("But as we have said countless times, the

question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground."). The same interview procedure was employed by Defendant for each of the eight men who applied for the position. There is no showing by Plaintiff that the interview process itself was based on a discriminatory animus. See e.g. Thanongsinh, 462 F.3d at 783. At most, Plaintiff has shown that Defendant mistakenly used a flawed and fragmented hiring process that was not necessarily designed to root out the most qualified applicant. Id. at 418 (noting that "the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason" (emphasis in original)). Plaintiff has not, however, presented any evidence that would reasonably lead to the conclusion that he was intentionally discriminated against because of his race.

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, Illinois Department of Corrections, on October 19, 2007 [Doc. 43] is GRANTED.

CASE TERMINATED.


Entered this  18th  day of January, 2008

                                    s/ Joe B. McDade
                                 JOE BILLY McDADE
                            United States District Judge